# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

RxUSA, INC., and RxUSA
INTERNATIONAL INC.,

        **Plaintiffs,**

    **v.**                                   **Case No.  06-C-00790**

CAPITAL RETURNS, INC., CLAUDE A.
DANCE, PETE M. SKLADANEK,
and JOHN DOES 1-10,

        **Defendants.**

---

CAPITAL RETURNS INC.

        **Counterclaimant,**

    **v.**

RxUSA INC., and
RxUSA INTERNATIONAL INC.,

        **Counterdefendants.**

---

# DECISION AND ORDER

---

    The Plaintiffs, RxUSA, Inc. ("RxUSA") and RxUSA International, Inc.

("RxUSA, Int'l") (collectively the "Plaintiffs"), filed this action against the Defendants,

Capital Returns, Inc. ("Capital"), Claude A. Dance ("Dance"), Pete M. Skladanek ("Skladanek"), and John Does 1-10 ("Does") (collectively the "Defendants") in the Eastern District of New York. The Plaintiffs' eight-count Complaint includes claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. ("RICO"), and state common law claims of intentional misrepresentation, negligent misrepresentation, breach of warranty, negligence, breach of fiduciary duty, and for an equitable accounting. The action was subsequently transferred to this District.

Jurisdiction is predicated on 28 U.S.C. § 1331, because the RICO claims arise under federal law, as well as by 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, is in excess of $75,000. Venue is proper under 28 U.S.C. § 1391(b).

## RELEVANT PROCEDURAL HISTORY

After the action was commenced in the Eastern District of New York, the Defendants filed a motion to dismiss the Complaint with prejudice "pursuant to Fed. R. Civ. P. 12(b)(2), (3), and (6) for lack of personal jurisdiction over the Defendants; improper venue, and failure to state a claim against the Defendants, or in the event full relief cannot be granted, an Order transferring this action to the United States District Court, Eastern District of Wisconsin." (Defs.' Mot. Dismiss filed April 13, 2006.) The initial argument in the Defendants' supporting brief was that the Complaint should be dismissed for improper venue pursuant to Rule 12(b)(3). (Defs.' Mem Supp. Mot. Dismiss Compl., 2, 4-6.) Next, it argued that the New York district court lacked personal jurisdiction over the Defendants. (*Id*. at 2,

2

7-11.)  Then, it argued that even if that court retained jurisdiction, the Complaint should be dismissed for failure to state a claim. (*Id*. at 11).

On June 29, 2006, United States District Judge Jack B. Weinstein ("Judge Weinstein") issued an order transferring the action to this district pursuant to 28 U.S.C. § 1404(a).  The order, in part, relied upon a forum selection clause providing that all claims and disputes related to the agreement are to be litigated in the Wisconsin courts.  In his transfer order, Judge Weinstein summarily denied, without discussion, all other motions.

Following the transfer of the action to this District, the Defendants filed a motion for judgment on the pleadings.  The Plaintiffs failed to file a timely response brief.  On January 9, 2007, the Plaintiffs filed a request for an extension of time to oppose the Defendants' motion for judgment on the pleadings.  The Court granted the motion.  On January 23, 2007, the Plaintiffs filed their brief in opposition to the motion for judgment on the pleadings**.**  That same day, they filed a "protective" motion for leave to amend their complaint.

The Defendants' motion for judgment on the pleadings and the Plaintiffs' motion for leave to amend their complaint are ready for resolution and are addressed herein.

### TRANSFER ORDER AND DIRECT ESTOPPEL

The Plaintiffs argue that Judge Weinstein's June 29, 2006, transfer order estops the Defendants from moving for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  They maintain that the Defendants raised the exact issues before Judge Weinstein and his order denying all aspects of the Defendants' substantive motion to dismiss

3

estops the Defendants' current Rule 12(c) motion for judgment on the pleadings. (Pls.' Mem. Opp'n Defs.' Mot J. Pleadings, 2.)

Direct estoppel[1] is generally applied within a single action. "Direct estoppel prevents a party from relitigating a fact which was already determined against it in 'a decision that finally disposes of a part of a claim on the merits but does not preclude all further action on the remainder of the claim; issues common to both parts of the claim are precluded, even though new issues remain to be decided.'" *United States v. Bailin,* 977 F.2d 270, 276 (7th Cir. 1992) (quoting *Jeffers v. United States,* 432 U.S. 137, 152 (1977)).[2]

The transfer order noted that the Defendants motioned for dismissal under Rule 12(b)(3) for improper venue or, alternatively, for transfer pursuant to 28 U.S.C. § 1404(a) to this district. (*RxUSA v. Capital Returns*, No. 05-C-0556-JBW-WDW, Memorandum and Order 1 (E.D.N.Y. June 29, 2006).) The court granted the motion for transfer under § 1404(a). The transfer order does not reference the two other grounds raised by the Defendants for dismissal — and as relevant to the Plaintiffs' estoppel argument — that dismissal pursuant to Rule 12(b)(6) for failure to state a claim was requested. The very last line of the order states: "All other motions are denied." (*Id*. at 2.)

---

[1]The parties refer to doctrine as "collateral estoppel," which is technically incorrect. Issue preclusion within a single action is direct estoppel. *Bailin*, 977 F.2d at 276. "Issue preclusion may arise not only as between separate claims or causes of action, but also within the confines of a single claim or cause of action. In the terminology that had become traditional by the advent of current efforts to refer to both types as issue preclusion, the first type is collateral estoppel and the second is direct estoppel." 18 Charles Allen Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4417 (3d ed. 1998). *See also*, Jack H. Friedenthal, Mary Kay Kane & Arthur R. Miller, *Civil Procedure: Hornbook Series*, 647 (4th ed. 2005).

[2]While *Bailin*, 977 F.2d at 276, addressed a criminal matter, the appeals court specifically noted that the same standard applies to direct estoppel in civil matters.

Judge Weinstein's decision to transfer the action under 28 U.S.C. § 1404(a) meant that the Defendants' alternative requests for relief; e.g., dismissal of the action for improper venue under Rule 12(b)(3), to dismiss for lack of personal jurisdiction, and to dismiss for failure to state a claim were no longer at issue. The most reasonable construction of the statement that "all other motions are denied" is that it addressed the Plaintiffs' pending protective motion to amend the complaint which they filed on June 14, 2006. (*See RxUSA*, No. 05-C-0556-JBW-WDW, Certified Copy of Docket, No. 24.) The order may contain a typographical error reflected by the use of the plural "motions," rather than the singular, "motion." The transfer order does not mention the Defendants' request before that forum that the action be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2) or pursuant to Rule 12(b)(6) for failure to state a claim. Those issues were not decided by the New York district court. As such, the transfer order does not estop the Defendants' motion for judgment on the pleadings.

## MOTION FOR JUDGMENT ON THE PLEADINGS

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c)[3] is subject to the same standard as a motion to dismiss pursuant to Federal

---

[3]Rule 12(c) states:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

FED. R. CIV. P. 12(C). The Defendants have submitted matters outside the pleadings. However, those materials have not been considered by the Court. Therefore, the motion has not been converted to a motion for summary judgment.

Rule of Civil Procedure 12(b)(6). *United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991). A district court may grant judgment on the pleadings if "the moving party clearly establishes that no material issue of fact remains to be resolved and he is entitled to judgment as a matter of law." *Flora*, 685 F.2d. at 211 (citing *Friedman v. Washburn Co.*, 145 F.2d 715, 717 (7th Cir. 1944)). The Court may only consider matters presented in the pleadings, documents referred to and attached to those pleadings, and briefs in support of the pleadings.[4] *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002) (citing *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988)). The Court must review all facts pled as true and construe all inferences in favor of the non-moving party. *Id. See also, Menominee Indian Tribe of Wis. v. Thompson,* 161 F.3d 449, 456 (7th Cir. 1998).

Under the federal notice-pleading regime, Federal Rule of Civil Procedure 8(c), a party needs only give "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order 'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, ___U.S. ____, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 335 U.S. 41, 47 (1957)). *Bell Atlantic* "retired" the statement in *Conley*, 335 U.S at 45-46, that "the accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can

---

[4]The standard is slightly modified for a claim that falls under Rule 9(b)'s heightened pleading requirements. Typically, courts ought to examine facts presented in memoranda in opposition to motions to dismiss, under Rule 12, so long as they do not contradict any facts in the complaint. *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992). This is premised on Rule 8's liberal notice pleading requirements. *Id.* However, Rule 9(b) specifically requires fact pleading for "all averments of fraud or mistake." FED. R. CIV. P. 9(b). *See also*, *Early*, 959 F.2d at 79. Therefore, for all claims involving fraud or mistake, courts should only look to the pleadings.

prove no set of facts in support of his claim which would entitle him to relief." *Bell Atl.*, 127 S.Ct. at 1968.

The *Bell Atlantic* court stated that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986) (on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation')." *Bell Atl. Corp.*, 127 S. Ct. at 1964-65.

"Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004) . . . ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact)," *Bell Atl. Corp.*, 127 S. Ct. at 1965 (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").)

7

A complaint must contain "only enough facts to state a claim to relief that is plausible on its face. . . plaintiffs [must] nudge. . . their claims across the line from conceivable to plausible" to overcome a Rule 12(b)(6) dismissal motion. *Bell Atl. Corp.*, 127 S.Ct. at 1974. Furthermore, if a party includes particular fact allegations with his claim, and the allegations demonstrate that the claim has no merit, then the claim must be dismissed – the party has plead himself out of court. *Thomas v. Farley*, 31 F.3d 557, 558 (7th Cir. 1994).

## Facts[5]

The Plaintiffs are an online pharmacy operating out of New York state. In early October 2003, Capital, a "reverse distributor" of pharmaceuticals, contacted the Plaintiffs by sending a "Pharmaceutical Returns Management Agreement" offering to enter into an agreement to dispose of the Plaintiffs' expired inventory. Negotiations began between the parties. In their mailings, e-mails, and phone calls, Capital offered to "partner" with the Plaintiffs to ensure that within 90 days the Plaintiffs would receive 100% of the expired pharmaceuticals' estimated return value. Capital further promised that their expertise and connections with pharmaceutical manufacturers would insure that the estimated return value accurately reflected the actual return value.

On October 20, 2003, the parties executed a "Service Agreement," whereby the Capital would act as the Plaintiffs' reverse distributor in exchange for 2.5% of the expired pharmaceuticals' estimated return value. In November 2003, pursuant to that agreement, the Plaintiffs shipped expired pharmaceuticals to Capital for processing and return to their original

---

[5]These facts are based on the well-pleaded facts viewed in a light most favorable to the Plaintiffs.

8

manufacturers. After processing the expired pharmaceuticals, Capital represented to the Plaintiffs that the estimated return value of the expired pharmaceuticals was $1,733,962.55, and that such amount of credits, less Capital's 2.5% fee ($43,349.06), would be received within by the Plaintiffs within 90 days. However, the Plaintiffs only received $827,043.02 in manufacturers' credits and refunds and only a small percentage of that amount was procured within 90 days. That amount was also $906,919.53 less than the estimated return value. The Plaintiffs refused to pay Capital the 2.5% estimated return value commission of $43,349.06 and commenced this action.

## Governing Law

Before turning to the merits of the Defendants' arguments, the Court considers the choice of law issue raised in the Plaintiffs' response brief. The Plaintiffs note that, without providing any choice of law analysis, the Defendants' arguments cite Wisconsin or Seventh Circuit case law. The Plaintiffs contend that presumably the Defendants rely upon paragraph 20 of the parties' agreement, but that such provision only applies to the construction of the agreement and does not apply to extra-contractual causes of action and that the Court should apply Wisconsin conflict of laws analysis to resolve the question.

The agreement states: "The parties hereto intend and agree that this Agreement is to be executed as a Wisconsin Agreement and to be construed in accordance with the laws of the State of Wisconsin." (Aff. of Jennifer L. Marborough Supp. Defs.' Mot. Dismiss ¶ 5, Ex. C (Service Agreement) ¶ 20.) The Plaintiffs do not provide any case law to support their interpretation of paragraph 20. The latter portion of the clause supports their construction.

But, what is the meaning of the proviso "this Agreement is to be executed as a Wisconsin Agreement?" Apparently, the Plaintiffs attribute to it no meaning or significance.

In any event, the Plaintiffs assert that since the Defendants only cite Wisconsin law in support of their motion, their response memorandum will be limited in kind. (Pls.' Mem. Opp'n Defs' Mot. J. Pleadings 7 n.4.) Without citation to case law, the Plaintiffs also posit that for the "most part, there is no major conflict between Wisconsin and New York law, save for the more liberal treatment of RICO claims in the Second Circuit [than] in the Seventh Circuit. However, even under the Seventh Circuit's narrower interpretation of RICO, the Defendants' instant motion must be denied." (*Id*.)

It is not the role of this Court to develop arguments for the parties. Thus, the Court will analyze the issues raised under Seventh Circuit and Wisconsin law.

## RICO – Counts I and II

The Defendants seek judgment on the pleadings dismissing the Plaintiffs' substantive RICO claim for participating in a RICO enterprise in violation of 18 U.S.C. § 1962(c)[6] (Count I) and for conspiracy to violate RICO in violation of 18 U.S.C. § 1962(d)[7] (Count II). The Defendants argue that the Plaintiffs' substantive RICO claim should be dismissed on the pleadings because: (1) the Plaintiffs have not complied with Rule 9(b)'s

---

[6] 18 U.S.C. §1962(c) states: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

[7] 18 U.S.C. §1962(d) states: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

pleading requirements, both in terms of the scheme and intent to defraud; and, (2) the Plaintiffs have not plead a pattern of racketeering activity.

While RICO was originally designed to increase the federal government's ability to fight organized crime, RICO extends far beyond the "prototypical" gangster to any organization that benefits from a pattern of illegal acts. *Midwest Grinding Corp. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992). However, RICO was not intended "to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions." *Id.*

To establish their substantive RICO claim, the Plaintiffs must demonstrate: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Gamboa v. Valez*, 457 F.3d 703, 706 (7th Cir. 2006) (citing *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985)). The "pattern" element must be comprised of at least two predicate acts of racketeering committed in the past ten years. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998). *See also*, 18 U.S.C. § 1961(5).

The Complaint alleges predicate acts of mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343. (Compl. 2-4, ¶¶ 11-25.) The Complaint also alleges that in addition to such predicate acts the Defendants also repeatedly violated §§ 1341 and 1343, and "numerous provisions of state law relating to fraud and larceny punishable by imprisonment for more than one year." (*Id.* at ¶ 30.) The Complaint alleges that, through mail and wire fraud, the Defendants undertook a pattern of illegal activities designed to entice the Plaintiffs to enter into an agreement, crafted to force the Plaintiffs to pay commissions at vastly inflated prices, which the Defendants had no intention of honoring. (*Id.* at 2-3.)

11

*Adequate Pleading Under Rule 9(b)*

The Defendants argue that the Plaintiffs' Complaint does not meet the Rule 9(b) pleading requirements because it neither names any specific individual who made an allegedly fraudulent representation nor provides specific dates of the alleged fraudulent misrepresentations, and it does not provide any specific evidence of the Defendants' intent. The Plaintiffs, quoting at length from their Complaint, argue that it contains adequate particularity.

Allegations of fraud can seriously injure a business and do irreparable harm to an individual's reputation. This is especially true with RICO claims, where bare allegations, even if later proved to be false, can label a business or individual as a "racketeer." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992). The normal standard for pleading under Federal Rule of Civil Procedure 8(a), with its liberal pleading requirements provides little protection against false accusations of fraud. *Id*. Therefore, Federal Rule of Civil Procedure 9(b) requires pleading with particularity for all fraud allegations, including RICO claims predicated upon either mail or wire fraud. *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992).

Federal Rule of Civil Procedure 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). The Seventh Circuit Court of Appeals reads "9(b) to mean that RICO Plaintiffs, like all other parties pleading fraud in federal court, must 'state the time, place and content' of the alleged communications perpetrating the fraud.'" *Graue Mill Dev. Corp. v.*

*Colonial Bank & Trust Co.*, 927 F.2d 988, 992 (7th Cir. 1991) (quoting *U.S. Textiles, Inc. v. Anheuser Busch Cos.*, 911 F.2d 1261, 1268 n.6 (7th Cir. 1990)).  In other words, a plaintiff must state the who, what, when, where and why of a fraud allegation.

        The Plaintiffs' Complaint does not identify the persons who made alleged fraudulent misrepresentations.  Rather, it refers to "the Individual Defendants," without providing the name of any Defendant.  For a complaint to satisfy Rule 9(b)'s pleading requirements, it must reference the individual or individuals who made fraudulent representations, rather than referring to the "individual Defendants," which, in essence, refers to them as a generalized group. *See Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F. 3d 771, 777 (7th Cir. 1993) (holding generalized allegations against defendants, without specifying a particular actor, fell short of the applicable case law standards); *Sears v. Likens*, 912 F.2d 889 (7th Cir. 1990) (attributing fraud to all the defendants lumped together is insufficient to satisfy Rule 9(b)); *Mills v. Polar Molecular Corp.*, 12 F. 3d 1170, 1175 (2nd Cir. 1993) (holding Rule 9(b) is not satisfied by vaguely attributing fraudulent statements to "Defendants"); *Budgetel Inns, Inc. v. Micro Sys., Inc.*, 8 F. Supp. 2d 1137, 1150 (E.D. Wis. 1998) (Rule 9(b) is not satisfied by lumping the defendants together without specifying who made the allegedly fraudulent representations).

        Moreover, with the exception of the beginning date of the parties' correspondence, the Complaint does not provide specific dates of the alleged fraudulent misrepresentations. *See Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 785 (7th Cir. 1999) (holding that under Rule 9(b)'s pleading requirements a plaintiff must specify the times

of the allegedly fraudulent allegations); *Eromon v. Grand Auto Sales, Inc.*, 351 F. Supp. 2d 825, 828 (N.D. Ill. 2004) (holding "[t]he heightened standard requires more than an allegation that the fraud occurred sometime during a period of months or years"). The Complaint provides great detail concerning the transaction between the parties, but it does not provide the required details of who made the fraudulent misrepresentations and when they were made. Thus, the Complaint does not satisfy Rule 9(b)'s pleading requirements for mail and wire fraud. Also absent is any specificity as to the allegation that the Defendants violated numerous provisions of state law relating to fraud punishable by imprisonment for more than one year.

The Defendants also maintain that the Plaintiffs did not follow Rule 9(b)'s higher pleading standards in regard to the Defendants' intent to defraud. However, Rule 9(b) does not require higher pleading standards for intent. Rule 9(b) states: "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." FED. R. CIV. P. 9(b). *See also*, *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006); *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004); *Snap-on Inc. v. Hunter Eng'g Co.*, 29 F. Supp. 2d 965, 970 (E.D. Wis. 1998 ); *Md. Staffing Servs. v. Manpower, Inc.*, 936 F. Supp. 1494, 1500 (E.D. Wis. 1996). The Complaint includes generalized allegations of intent that are sufficient to meet Rule 9(b)'s pleading requirements.

In the end, the Complaint does not meet the strict pleading requirements of Rule 9(b) because it does not specify who made the alleged fraudulent representations and when the alleged fraudulent representations were made. Although this pleading deficiency is fatal to

14

the Plaintiffs' substantive RICO claim, the Court will also address the Defendants' second challenge to that claim.

*A Pattern of Racketeering – Open-Ended Continuity*

The Defendants also argue that the mail and wire fraud allegations do not adequately plead a pattern of racketeering. To demonstrate the pattern of racketeering requirement, a plaintiff must establish at least two predicate acts of racketeering activity in the past ten years, and satisfy the "continuity plus relationship test." *Jennings v. Auto Meter Prods., Inc.*, No. 06-2466, ___ F.3d. ___,2007 F.3d 2120337*4 (7th Cir. July 25, 2007); *Midwest Grinding Corp.*, 976 F.2d at 1022. The continuity plus relationship test requires that: "The predicate acts must be related to one another (the relationship prong) and pose a threat of continued criminal activity (the continuity prong)." *Id.*

Continuity can be either a closed- or open-ended concept. *Midwest Grinding Corp.*, 976 F.2d at 1022 (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989)). To satisfy close-ended continuity, a plaintiff must demonstrate a series of related criminal activities over a closed, "substantial period of time." *Id.* (citing *H. J. Inc.*, 492 U.S. at 242). To satisfy open-ended continuity, a plaintiff must demonstrate that criminal activities, which in themselves lack repetition, create an on-going threat of future repetition. *Id.*

The Plaintiffs assert that the Defendants' intentional misrepresentations establish open-ended continuity. Specifically, the Plaintiffs argue that each mailing, e-mail, or phone call in which the Defendants promised a payment of 100% of the estimated return value of the expired pharmaceuticals constitutes a separate act of either mail fraud under 18 U.S.C. § 1341

15

or wire fraud under 18 U.S.C. § 1343.  Further, these practices were an on-going part of the Defendants' business; thus, a continuing threat of future repetition exists.

Generally, RICO claims cannot be based on a pattern of mail or wire fraud that causes a single harm to a single entity.  *Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001).  Mail and wire fraud are a different species than all other types of RICO predicate acts.  Unlike other predicate acts that usually require a single act to do harm, mail and wire fraud usually require several instances to do harm.  Therefore, multiple acts of mail and wire fraud which create a single harm in a single transaction cannot constitute a pattern under RICO.  *Id*.  *See also*, *Emery v. Am. Gen. Fin*., 71 F.3d 1343, 1348 (7th Cir. 1995); *Miller v. Gain Fin., Inc.*, 995 F.2d 706, 709-10 (7th Cir. 1993); *Skycom Corp. v. Telstar Corp*., 813 F.2d 810, 818 (7th Cir.1987); *Lipin Enters., Inc. v. Lee*, 803 F.2d 322, 325 (7th Cir. 1986); *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1278-79 (7th Cir. 1989).  Therefore, for a RICO plaintiff to rely exclusively on mail or wire fraud for a pattern of racketeering, he must provide some allegations that the defendant used mail or wire fraud in another transaction.  *See Slaney*, 244 F.3d at 600.

Allegations of mail or wire fraud in another transaction are subject to Rule 9(b)'s heightened pleading requirements.  *Id*.  For example, in *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 631 (7th Cir. 2001), a similar case, plaintiff Pizzo alleged that the defendants violated RICO by using mail and wire fraud to entice her to buy expensive imported furniture, which was not as advertised.  Pizzo further alleged that the defendants did so as a part of their usual business, identifying another dissatisfied customer and claiming that "others" would be found

during discovery. *Id.* at 633. However, the Seventh Circuit Court of Appeals held that this was not enough stating:

> We are not impressed by Pizzo's argument that with pretrial discovery she might discover additional frauds. If the Defendants were busy defrauding their customers, Pizzo could have obtained evidence of that without discovery by consulting the Better Business Bureau and the FTC, or by advertising for persons complaining of being defrauded by the Defendants. The Defendants should not be put to the burden of litigating a RICO suit beyond the pleadings by allegations as thin as in this case.

*Id.* In upholding the dismissal for failure to state a claim, the court held that a plaintiff needs more than bare allegations that the defendant uses fraud as a routine part of business to state a RICO claim.

In this action, the Plaintiffs do not cite any other instances of mail or wire fraud that could create a pattern of fraudulent activity. Like *Pizzo*, the Plaintiffs have failed to allege a pattern of racketeering. Conclusory allegations of other victims are not enough to survive judgment on the pleadings. The Complaint's allegations of mail and wire fraud lack adequate specificity and the Complaint does not establish a pattern of racketeering. Based on the foregoing, judgment on the pleadings dismissing the substantive RICO claim of Count I is granted.

17

*Section 1962(d) Conspiracy to Violate RICO – Claim II*

It is well-established that to plead a RICO conspiracy claim, the Plaintiffs must be able to prove an underlying RICO violation. *See Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000) (citing *Midwest Grinding Inc.*, 976 F.2d at 1026). In the present case, the Plaintiffs have not adequately plead the underlying RICO charge. Therefore, the Plaintiffs' § 1962(d) conspiracy to violate RICO claim is also dismissed on the pleadings.

### Intentional Misrepresentation – Count III

The Defendants also move for judgment on the pleadings dismissing the Plaintiffs' common law intentional misrepresentation claim. Under the Wisconsin common law of intentional misrepresentation, a plaintiff must prove that "(1)[t]he defendant made a factual representation; (2) which was untrue (3) the defendant made the representation knowing it was untrue or made it recklessly without caring whether it was true or false; (4) the defendant made the representation with intent to defraud and to induce another to act upon it; and, (5) the plaintiff believed the statement to be true and relied upon it to his/her detriment." *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205, 211 (Wis. 2005).

In opposing judgment on the pleadings the Plaintiffs erroneously rely on Illinois, not Wisconsin, law,[8] arguing that actionable intentional misrepresentations can consist of misrepresentations as to future events. Wisconsin law generally limits fraudulent

---

[8]The Plaintiffs rely upon *Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, No. 03-C-9421, 2005 U.S. Dist. WESTLAW 3236590, *3-5 (N.D. Ill. 2005), which analyzed a promissory fraud claim under Illinois common law as articulated in *Barille v. Sears Roebuck & Co.*, 682 N.E.2d 118, 120 (Ill. App. Ct. 1997), and *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F. 3d 641, 642 (7th Cir. 2002), applying Illinois law. The Plaintiffs' brief also references several other Illinois state decisions.

misrepresentation to present, or preexisting, material facts, not to any promises of future events. *U.S. Oil Co. v. Midwest Auto Care Servs., Inc.*, 440 N.W.2d 825, 827 (Wis. Ct. App. 1989) (citing *Hartwig v. Bitter*, 139 N.W.2d 644, 646 (Wis. 1966)). *See also*, *Friends of Kenwood v. Green*, 619 N.W.2d 271, 275 (Wis. Ct. App. 2000). Wisconsin recognizes a limited exception to this rule for contract cases, when the promisor at the time of contracting has no intention to perform in the future. *Id.*

The Plaintiffs' intentional misrepresentation claim incorporates all the prior allegations of the Complaint. (Compl. ¶ 39). The allegations of the Complaint regarding the Defendants' fraudulent scheme (*see* Compl. Preamble & Summary), when read in their entirely and construed in the light most favorable to the Plaintiffs, allege facts indicating that upon entering into the Service Agreement the Defendants had no intention of actually performing as promised. The Plaintiffs have alleged a plausible intentional misrepresentation claim. Therefore, judgment on the pleadings dismissing the intentional misrepresentation claim is denied.

### Negligent Misrepresentation – Count IV

The Defendants seek dismissal of the Plaintiffs' negligent misrepresentation claim, arguing that Wisconsin does not recognize an implied fiduciary duty arising between companies negotiating at arms-length because there is no disparity in bargaining power. As such, even if a promise to be a "partner" could give rise to an implied fiduciary duty under some contexts, it cannot in this context. The Plaintiffs, conversely, argue that by using the

term "partner," the Defendants sought to create an expectation of trust which established a fiduciary duty to the Plaintiffs.

Under Wisconsin law, a claim of negligent misrepresentation requires that a plaintiff must prove: "(1) A duty of care or voluntary assumption of a duty on the part of the defendant; (2) a breach of that duty, i.e., failure to exercise ordinary care in making the representation or in ascertaining the facts; (3) a causal link between the conduct and the injury; and, (4) actual loss or damage as a result of the injury." *Hatleberg v. Norwest Bank Wis.*, 700 N.W.2d 15, 26 (Wis. 2005).

The sole element at issue is whether there existed a fiduciary duty between the parties. Wisconsin recognizes only two situations where a fiduciary duty can be created: (1) those specifically created by contract or a formal legal relationship; and, (2) "those implied in law due to the factual situation surrounding the transactions and relationships of the parties to each other and to the questioned transactions." *Prod. Credit Assoc. v. Croft*, 423 N.W.2d 544, 546 (Wis. 1988).

Inherent in the Plaintiffs' argument is the existence of an implied fiduciary duty of care between the two parties. An implied fiduciary duty is created only when uneven bargaining power creates a relationship where the stronger party has a duty not to take advantage of the weaker party. *Id. See also*, *Noonan v. Nw. Mut. Life Ins. Co.*, 687 N.W.2d 254, 261 (Wis. 2004); *Atkinson v. Everbrite, Inc.*, 592 N.W.2d 299, 302 (Wis. Ct. App. 1999); *Langley v. Am. Bank of Wis.*, 738 F. Supp. 1232, 1244 (E.D. Wis. 1990) (applying Wisconsin law). Without a disparity in bargaining power, Wisconsin does not recognize an implied

fiduciary duty of care. Since Wisconsin does not recognize such a fiduciary duty between businesses negotiating at arms-length, judgment on the pleadings dismissing the Plaintiffs' negligent misrepresentation claim is granted.

### Breach of Warranty, Negligence, and Breach of Fiduciary Duty - Counts V, VI, and VIII

The Defendants move for judgment on the pleadings dismissing the Plaintiffs state common law breach of warranty, negligence, and breach of fiduciary duty claims. The Defendants contend: (1) there is no tort duty of care independent of a contractual duty of care; and, (2) Wisconsin's economic loss doctrine bars recovery for solely economic injuries.

At the outset, the Court notes that these arguments are pertinent to tort claims. Despite the parties' contrary characterization, the breach of warranty claim sounds in contract, not tort. *See Peterson v. Cornerstone Prop. Dev., L.L.C.*, 720 N.W.2d 716, 725 (Wis. Ct. App, 2006). Therefore, the Defendants' arguments are inapposite with respect to that claim. Judgment on the pleadings is denied as to the Plaintiffs' breach of warranty claim (Count V).

#### *Duty of Care*

The Defendants assert that they had no duty to the Plaintiffs apart from their contractual obligations under the Service Agreement and, consequently, any claims must arise under contract, not tort, law. The Plaintiffs contend each of these claims arose independently of the agreement and, therefore, they can bring independent tort claims.

Failure to fulfill contractual obligations generally does not create tort liability. *Daanen & Janssen v. Cedarapids, Inc.*, 573 N.W.2d 842, 846 (Wis. 1998); *see also,*

*MacKenzie v. Miller Brewing Co.*, 608 N.W.2d 331, 344 (Wis. 2000). However, a contractual relationship does not cut off tort liability, if the tort claim can be brought independent of contractual obligation. *McDonald v. Century 21 Real Estate Corp*., 390 N.W.2d 68, 70 (Wis. Ct. App. 1986). *See also*, *Kerry Inc. v. Angus-Young Assocs.*, 694 N.W.2d 407, 412 (Wis. Ct. App. 2005)*; Milwaukee Partners v. Collins Eng'rs, Inc.,* 485 N.W.2d 274, 277 (Wis. Ct. App. 1992).

In *Landwehr v. Citizens Trust Co.*, 329 N.W.2d 411, 414 (Wis. 1983) the Wisconsin Supreme Court held that a testator's breach of contract in failing to make certain provisions in a will was not actionable in tort. In declining to recognize a tort cause of action, the court referred to its prior adoption of the rule that "[o]rdinarily a breach of contract is not a tort, *but a contract may create the state of things* which furnishes the occasion of a tort." *Id*. (quoting *Colton v. Foulkes*, 47 N.W.2d 901 (Wis. 1951) (citing 38 Am. Jur. *Negligence* [661-62] Sec. 20).

In *Brooks v. Hayes*, 395 N.W.2d 167, 176 (Wis. 1986), the Wisconsin Supreme Court held a general contractor liable under both tort and contract law for the negligent installation of a fireplace by a subcontractor. The court held "accompanying every contract is a common-law duty to perform it with care and skill, and a failure to do so is a tort as well as a breach of contract." *Id*. at 169. In other words, a tort claim that occurred while performing a contract may be brought, if the tort duty existed independently of any contractual duties.

The Plaintiffs bear the burden of establishing the existence of such independent duties, apart from the contractual duties. The negligence claim alleges that "Capital was negligent in dealing the goods delivered to it by the Plaintiffs in that it failed to exercise that duty of care which is exercised by similarly situated entities in handling such goods and obtained [sic] credits therefore [sic]." (Compl. ¶ 55.) While it is a close question, construed in a light most favorable to the non-movant Plaintiffs, the negligence claim contains sufficient factual allegations to allege a plausible independent breach of duty arising from actions taken under the Service Agreement. *See Bell Atl. Corp.*, 127 S. Ct. at 1974.

The breach of fiduciary duty claim alleges that Capital breached its fiduciary duty to the Plaintiffs because Capital failed to take such steps as were necessary to ensure that the Plaintiffs received the maximum possible credits for the return of the Plaintiffs' expired pharmaceutical products but rather acted only in the interests of Capital exclusively to the detriment of the Plaintiffs. (*See* Compl. ¶ 65.) Despite construing the well-pleaded facts in a light most favorable to the non-movant, the Complaint does not allege sufficient facts to give rise to a plausible duty that existed independent of the Service Agreement. *See Bell Atl. Corp.*, 127 S. Ct. at 1974. The facts plead merely restate Capital's contractual duty. *See e.g.*, Compl. ¶ 13 ("Capital also orally represented to RxUSA that, once Capital determined the Estimated Return Value of RxUSA's pharmaceutical goods, RxUSA would receive 100 % thereof." ) Therefore, judgment on the pleadings dismissing the breach of fiduciary duty claim (Count VIII) is granted.

23

*Economic Loss Doctrine*

The Defendants maintain that the Plaintiffs' common-law negligence claim is are barred by Wisconsin's economic loss doctrine. The economic loss doctrine bars claims between parties bound by contract for purely economic damages resulting from the contractual relationship. *Digicorp, Inc. v. Ameritech Corp.*, 662 N.W.2d 652, 659 (Wis. 2003). The fundamental principle behind Wisconsin's economic loss doctrine is that contract law is better suited to resolving commercial conflicts between parties than tort law. *Van Lare v. Vogt, Inc.*, 683 N.W.2d 46, 53 (Wis. 2004).

However, the Wisconsin Supreme Court recently limited this doctrine to contracts for sales of goods. "If the contract is purely a service contract, the economic loss doctrine does not apply." *1352 N. Van Buren, LLC v. T-3 Group, Ltd.*, 716 N.W.2d 822, 831 (Wis. 2006) (citing *Ins. Co. of N. Am. v. Cease Elec. Inc.*, 688 N.W.2d 462, 472 (Wis. 2004)). In the present case, the contract between the Plaintiffs and Defendants is a service contract. Thus, the economic loss doctrine does not bar the Plaintiffs' negligence claim.

**Equitable Accounting – Count VII**

The Defendants also seek dismissal of the Plaintiffs' equitable accounting claim. Accounting is a claim in equity available when a plaintiff needs to compel an accounting of his money or property held by a defendant. *Antigo Superior Nursing Home, Inc. v. First Fed. Sav. & Loan Ass'n.*, 186 N.W.2d 265, 268 (Wis 1971). A court requires more than a mere statement by a party that he does not know the status of his account, however. *Ellis v. Sw. Land Co.*, 78 N.W. 583, 586 (Wis. 1899). It requires both a complete inadequacy of legal

24

remedies and a special ground to invoke equity jurisdiction. *Walter Diehnelt, Inc. v. Root*, 198 N.W. 388, 389 (Wis. 1924). "These special grounds of equity jurisdiction may be stated, generally, to be the need of a discovery, the complicated character of the accounts, and the existence of a fiduciary or trust relation." *Id.* (citing *Ellis*, 78 N.W. at 586). The need for a party to pursue an equitable accounting claim is generally unnecessary in light of modern discovery rules. *See Didion Mining, Inc. v. Agro Distrib., L.L.C.*, No. 05-C-227, 2007 WL 702808, at *11 (E.D. Wis. March 2, 2007) (citing *Litton Sys., Inc. v. Frigitemp Corp.*, 613 F. Supp. 1386, 1390 (S.D. Miss. 1985)).

The Defendants do not dispute the special grounds for equity jurisdiction; rather, the Defendants argue that the Plaintiffs have no need for an accounting in equity because there will likely be an adequate remedy at law through resolution of any claim for breach of contract. However, a motion for judgment on the pleadings does not address the likelihood of success on the merits of the claim, it only questions whether the Plaintiffs should be allowed to go ahead and present evidence. *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The Complaint pleads a plausible claim in equity for accounting. *See Bell Atl. Corp.*, 127 S. Ct. at 1974. The Plaintiffs argue that they have no ability to account for the expired pharmaceuticals they turned over to the Defendants, or for any additional funds the Defendants may have received as a result of the disposition of the Plaintiffs' expired pharmaceuticals. Moreover, it is not certain at this time that there will be an adequate remedy

at law. Therefore, judgment on the pleadings as to the equitable accounting claim of Count VII is denied.

### PROTECTIVE MOTION FOR LEAVE TO AMEND PLAINTIFFS' COMPLAINT

The Plaintiffs filed a "protective" motion to amend their complaint but did not submit their proposed amended complaint with the motion. In their supporting memorandum, they request an exemption from the requirements of Civil L. R. 15.1 because they are "not aware of what, if anything, the Court may find technically deficient with respect to the existing Complaint." (Pls.' Mem. in Supp. of Mot. to Am. Compl. 3) (Docket No. 60).

Civil Local Rule 15.1(E.D. Wis.) states: "[a]ny party submitting a motion to amend *must* attach to the motion the original of the proposed amended pleading." (emphasis added.) The purpose of the rule is to enable opposing counsel and the Court to respond to and evaluate any request to amend a pleading. The Plaintiffs' request violates the letter and spirit of Civil Local Rule 15.1. Therefore, the Plaintiffs' motion to amend is denied without prejudice.

### SUMMARY

The Plaintiffs' RICO claims (Counts I and II) are dismissed because they do not provide adequate detail of when and to whom the Defendants made allegedly fraudulent representations and do not adequately plead a pattern of racketeering. Further, the Plaintiffs' negligent misrepresentation claim (Count IV) is dismissed because Wisconsin law does not recognize a fiduciary duty between sophisticated businesses negotiating at arms-length. The Plaintiffs' breach of fiduciary duty claim (Count VIII) is dismissed because the Plaintiffs have

not alleged a breach of a duty independent of that created by the Service Agreement. In all other respects, the Defendants' motion for judgment on the pleadings is denied. The Plaintiffs' motion to amend the Complaint is also denied.

At this juncture, the case is ready for a telephone scheduling conference pursuant to Rule 16 of the Federal Rules of Civil Procedure. The Court will conduct the conference on November 27, 2007, at 9:30 a.m. (CST). The Court will initiate the call.

The purpose of the conference call will be to establish a Scheduling Order which will limit the time to:

1.  join other parties and to amend the pleadings;
2.  file and hear motions;
3.  complete discovery; and
4.  disclose experts.

The Scheduling order may also include:

5.  the date or dates for subsequent Rule 16 conferences, a final pretrial conference and trial; and,
6.  any other matters appropriate in the circumstances of the case.

The time limitations set forth in the Scheduling Order shall not be modified except upon showing of good cause and by leave of the Court. Fed. R. Civ. P. 16(b)(6).

Special attention should be given to Rule 26(f), which requires the parties to conduct a settlement/discovery conference at least 21 days prior to the scheduling conference. The Rule 26(f) conference may be conducted by telephone. Rule 26 also mandates that the

27

parties, within 14 days of their conference: (1) file a written report outlining the proposed discovery plan they have developed at their Rule 26(f) conference; and (2) make the required initial disclosures under Rule 26(a) regarding witnesses and documents. In addition to the matters specified in subsections (1) through (4) of Rule 26(f), the Court requests that the proposed discovery plan submitted by the parties include a very brief statement of the nature of the case, lasting no more than several sentences.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1.     The Defendants' motion for judgment on the pleadings (Docket No. 41) is **GRANTED** as to Counts I, II, IV, and VIII of the Plaintiffs' Complaint and **DENIED** as to Counts III, V, VI, and VII. Counts I, II, IV, VIII of the Complaint are **DISMISSED**.

2.     The Plaintiffs' motion to amend the Complaint (Docket No. 56) is **DENIED**.

3.     The parties **SHALL** participate in a telephone scheduling conference which the Court will initiate on **November 27, 2007, at 9:30 a.m. (CST)**.

4.     Prior to such conference, the parties **SHALL** also comply with the requirements of Rule 26 of the Federal Rules of Civil Procedure as outlined above.

Dated at Milwaukee, Wisconsin this 14th day of September, 2007.

**BY THE COURT**


**s/ Rudolph T. Randa**
**HON. RUDOLPH T. RANDA**
**Chief Judge**